UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOHAMMED ALAZAWI,

                        Plaintiff,

v.                                                  CASE # 18-cv-00633

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>LEWIS L. SCHWARTZ, ESQ.<br>SAMANTHA J. VENTURA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS J. CANNING, ESQ.<br>FRANCIS D. TANKARD, ESQ.<br>REBECCA HOPE ESTELLE, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a standing order, to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **GRANTED**, the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this order.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1970 and was 44 years of age when he applied for SSI. (Tr. 134). He completed the 12th grade. (Tr. 149). Generally, Plaintiff's alleged disability consists of Crohn's disease, arthritis, and disc problems in the back. (Tr. 148). His alleged disability onset date is October 30, 2014. (Tr. 148).

### B. Procedural History

On October 30, 2014, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 57). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 5, 2017, Plaintiff appeared before the ALJ, Rosanne M. Dummer. (Tr. 15). On May 31, 2017, ALJ Dummer issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 12-32). On April 3, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law. (Tr. 15-29). First, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 30, 2014, the application date. (Tr. 17). Second, the ALJ found Plaintiff had the severe impairments of status-post February 2014 bilateral inguinal hernia repair with mesh and excision of right cord lipoma, Crohn's disease, and myalgias. (*Id.*). Third, the ALJ found Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (Tr. 18.) Fourth, the ALJ found

Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional limitations. (Tr. 19). The ALJ determined Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; sit about six of eight hours, stand about six of eight hours, walk about six of eight hours; and should avoid concentrated exposure to extremes of heat and cold, wetness, humidity, and poor ventilation. (Tr. 19). Fifth, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 27.) Sixth, the ALJ determined that there were a significant number of jobs in the national economy Plaintiff could perform. (Tr. 27.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (Dkt. No. 7 at 10 [Pl.'s Mem. of Law]). Second, Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence. (Dkt. No. 7 at 15). Plaintiff breaks this down into stating the opinion of Dr. Wacker was improperly rejected and the ALJ substituted her own lay opinion. (*Id*.).

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ's credibility assessment was supported by the record evidence. (Dkt. No. 12 at 17 [Def.'s Mem. of Law]). Second, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 12 at 20).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human*

*Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

Arguments are taken out of order for ease of the Court's discussion.

### A. RFC

The residual functional capacity ("RFC") is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Plaintiff argues the ALJ improperly rejected the opinion of Dr. Wacker and relied on her own law opinion thereby making an RFC finding that was not supported by substantial evidence.

On May 3, 2017, Dr. Wacker completed a "Crohn's and Colitis Medical Source Statement." (Tr. 452). He estimated that Plaintiff could walk four blocks; could sit more than two hours; stand two hours; sit for a total of at least six hours in an eight-hour workday; and stand/walk about four hours in a workday. (Tr. 453). He needed a job that permitted ready access to a restroom, would have minimal notice of the need for a restroom break, and needed to take three or four unscheduled restroom breaks during the workday. (Tr. 453). Plaintiff could rarely lift 50 pounds, occasionally lift up to 20 pounds, and frequently lift less than 10 pounds. (Tr. 454). He could frequently twist, stoop, crouch, squat, and climb ladders and stairs. (Tr. 454). Dr. Wacker marked the box, that Plaintiff would likely be off task 10% of the day and would be absent about three days per month. (Tr. 454). Dr. Wacker stated he did not evaluate Plaintiff's ability to deal with stress because of "limited contact" with him. (Tr. 454). Dr. Wacker stated that prognosis was unknown because he had been "noncompliant with testing and follow-up." (Tr. 452). In her decision, the ALJ gave the opinion "some weight" but then found every limitation was "inconsistent" with the record overall. (Tr. 26). She cited the facts that the claimant was only seen twice, lack of follow through with testing, sporadic use of some medications, and routine follow-up in six to eight weeks, as inconsistent with the limitations opined. (Tr. 26).

As pointed out by the ALJ, Dr. Wacker is a gastroenterologist and examined the claimant personally twice. Two personal visits have been found to meet the frequency requirement of 20 CFR 20 CFR §404.1502 and §416.902 to be considered a treating source. *Mussaw v. Commissioner of Social Sec.,* 2013 WL 1293774, (N.D.N.Y. March 28, 2013)(a treating physician who personally saw a claimant twice, completed a medical source statement and was consulted on occasion, met the frequency requirement of 20 CFR §404.1502 and §416.902 to be considered a

6

treating source). Although Dr. Wacker self-limited his opinion due to "limited contact", this was only in the section regarding tolerance for work stress and not the physical limitations. (Tr. 454).

The ALJ stated the opinion was "inconsistent with the overall record" but the limitations were consistent with diagnostic findings showing Crohn's disease as indicated by the two gastroenterologists. Dr. Wacker and Dr. Gupta, that treated Plaintiff. Plaintiff was hospitalized in May 2014 for a small bowel obstruction. (Tr. 228). He had diverticulitis and colitis. (Tr. 209). A CT scan showed bowel wall thickening and inflammatory changes, as well as adenopathy. (Tr. 276). A small bowel study in July 2014 showed active Crohn's disease. (Tr. 368). In October 2016, a CT scan again showed abnormal bowel wall thickening and inflammatory bowel disease. (Tr. 401). A colonoscopy in March 2017 had to be aborted early due to limited mobility of the colon and revealed the colon to be moderately torturous. (Tr. 407). The opinion is also consistent with treatment notes of examinations with both providers. Plaintiff repeatedly complained to his providers of loose bowel movements, as often as 14 times a day. (Tr. 213, 215, 218, 220, 350, 361, 377, 388, 389, 393, 403, 411). His abdomen was often tender. (Tr. 213, 251, 377, 385, 388, 398. He experienced abdominal pain on multiple occasions. (Tr. 213, 215, 220, 228, 384, 389, 397, 403, 421). The ALJ's citing of the normal physical examination findings at the consultative examination, like normal gait and strength, as an example of inconsistency with the opinion is not relevant to the Crohn's disease, which was not even discussed by the examiner. (Tr. 26).

The ALJ also erred in questioning the validity of the opinion based on his "conservative" course of treatment. *See Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000) (ruling that "the district court improperly characterized the fact that [the treating physician] recommended only conservative [treatment] as substantial evidence that plaintiff was not physically disabled during the relevant period"); *see also Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (noting that an

7

"ALJ cannot arbitrarily substitute his own judgment for competent medical opinion" (internal quotation marks omitted)). The ALJ relies on "conservative" treatment of Plaintiff's Crohn's disease to discount opined limitations, however, treatment went beyond routine visits or medication, as discussed above, and included multiple colonoscopies and CT scans, in addition to a biological agent. (Tr. 276, 401, 405, 407). Regardless, a conservative treatment plan does not automatically equate to a finding of no disability. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Further, the claimant had already undergone bowel resectioning surgery before the alleged onset date and his symptoms had returned after a period of being controlled with the surgery. The ALJ stated the evidence of record showed Plaintiff's Crohn's was "controlled" but cites just two records in the file that are large. (Tr. 26). One of those large exhibits has a record from Dr. Gupta stating Plaintiff had "quiescent Crohn's disease" but that he remained "quite symptomatic." (Tr. 394). Administrative law judges are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004).

Further, the Defendant's argument that the number of bowel movements reported has been inconsistent overtime and is inconsistent with the opinion is also unsuccessful. This is a post-hoc rationalization. This court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)); *see Thomas v. Colvin*, 302 F. Supp. 3d 506, 511 (W.D.N.Y. 2018) ("*post hoc* rationalizations are not an appropriate substitute for an ALJ's duty to support her

conclusions by reference to substantial evidence"). Regardless, although there are two instances where Plaintiff only reported 4-6 bowel movements a day, there are a number of other records where Plaintiff has reported frequency between 6 and 15 times per day. (Tr. 213, 215, 218, 220, 350, 361, 377, 388, 389, 393, 403, 411). To reiterate, an ALJ may not pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004). As stated by the ALJ in her decision, Crohn's disease symptoms wax and wane with periods of improvement and exacerbation but she chose to only find the report of three bowel movements per day in February 2016 as credible. (Tr. 24).

Defendant's argument that Dr. Wacker's opinion was properly given less weight because it is a check box form is another example of post-hoc rationalization. The ALJ did not mention the format of the decision when stating the weight accorded. "The ALJ, not the Commissioner's lawyers, must 'build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review.'" *Hamedallah ex rel. E.B. v. Astrue,* 876 F.Supp.2d at 144 (N.D.N.Y.2012).

The primary impairment alleged by Plaintiff was Crohn's disease and Dr. Wacker's opinion was the only opinion that addressed the impairment. The ALJ found Plaintiff's Crohn's disease to be a severe impairment but it is unclear to the Court what limitations in the RFC were related to this impairment. *See Defrancesco v. Berryhill,* No. 16-CV-6575-FPG, 2017 WL 4769004, *2 (W.D.N.Y. Oct. 23, 2017)(The ALJ rejected the one physical medical opinion of record but came to an RFC finding of light work and the Court found it was "unclear how the ALJ, who is not a medical professional, was able to make this determination without reliance on a medical opinion"). Dr. Wacker was a specialist and the administrative record contained both his

9

records and specialist Dr. Gupta's records. As discussed above, there were CT scans, a small bowel study, and colonoscopies, which are arguably complex medical findings that should not have been ignored or interpreted by the ALJ as inconsistent with the complaints of frequent and urgent bowel movements. *See Urban v. Berryhill*, No. 16-CV-76-FPG, 2017 WL 1289587, at *3 (W.D.N.Y. Apr. 7, 2017)( an ALJ may make a common sense judgment about functional capacity without a physician's assessment when the physical impairments are minor, but not when the record contains complex medical findings).

An ALJ's RFC determination may be supported by substantial evidence even where the ALJ rejected a specific medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes). *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017). However, by rejecting every limitation Dr. Wacker identified in his opinion, with no other medical opinion addressing the Crohn's disease, it is unclear how the ALJ found there would be no limitations related to this impairment, given the substantial evidence that there would be limitations related to the Crohn's disease, particularly bathroom use. (Tr. 53). *See Nanartowich v. Berryhill*, 2018 WL 2227862, at *10 (W.D.N.Y. May 16, 2018) ("[T]he ALJ's decision does not articulate clearly the connection between the evidence of record and the physical limitations assessed in the RFC. Although the ALJ thoroughly summarized the record, he did not adequately explain how the evidence of record supported his RFC findings, particularly his conclusion that [plaintiff] was capable of the walking or standing requirements of

light work.") (citing *Cole v. Colvin*, 2015 WL 9463200, *5, *Palascak v. Colvin*, 2014 WL 1920510, *10 (W.D.N.Y. 2014). This is not harmless because the vocational expert testified that if a person was off task by using the restroom for more than 5% of the day, work would be precluded. (Tr. 53). The vocational expert testified that a person who needed to take unscheduled breaks away from a workstation two to three times a day in addition to regular breaks and would be absent 3 to 4 days a month would be unable to perform work in the national economy. (Tr. 53). It is unclear if the ALJ's RFC accounted for Plaintiff's Crohn's or substantial evidence of related bathroom use that may wax and wane over time.

Plaintiff advances other arguments that he believes require reversal of the Commissioner's decision. (Dkt. No. 7). The Court will not reach those arguments because it remands based on the RFC error.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.


Dated: **September 3, 2019**
      **Rochester, NY**  *J. Gregory Wehrman*  *J.G.W.*

      **HON. J. Gregory Wehrman**
      **United States Magistrate Judge**